UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re:

            SOUTH SIDE HOUSE, LLC,

                 Debtor.

------------------------------------------------------------------x

U.S. BANK NATIONAL ASSOCIATION, *as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP11 Commercial Mortgage Pass-Through Certificates, Series 2007-LDP11, acting by and through its Special Servicer CW Capital Asset Management LLC,*

                 Plaintiff,

        -against-

ISRAEL PERLMUTTER and MENECHEM STARK,

                 Defendants.

------------------------------------------------------------------x

Chapter 11
Case No. 09-43576-ess

Adv. Pro. No. 11-01455


**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
ON THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


Appearances:

MELVIN HIRSHOWITZ LAW OFFICE
Melvin S. Hirshowitz, Esq.
630 Third Avenue, 18th Floor
New York, NY 10017
   *Attorneys for the Defendants*

McCARTER & ENGLISH, LLP
Joseph Lubertazzi, Jr., Esq.
Peter Knob, Esq.
245 Park Avenue, 27th Floor
New York, NY 10167
   *Attorneys for the Plaintiff*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

Before this Court is the Plaintiff's motion for summary judgment on the first count of its Complaint in an action referred to this Court by the United States District Court for the Eastern District of New York for the issuance of proposed findings of fact and conclusions of law pursuant to Bankruptcy Rule 9033.

The Defendants, Israel Perlmutter and Menachem Stark, are the principals of South Side House, LLC, the Debtor in a Chapter 11 case pending in this Court.  The Plaintiff is the Debtor's largest creditor in the bankruptcy case as the holder of a commercial mortgage loan made to the Debtor in the principal amount of $29 million.  In connection with that loan, the Debtor entered into a Note, Mortgage, and Other Security Documents (the "Loan Documents"), and the Defendants entered into an Indemnity Agreement.

In this action, the Plaintiff seeks to hold the Defendants liable as guarantors under the Indemnity Agreement.  The Plaintiff argues that it is entitled to summary judgment on the first count of the Complaint, its cause of action to enforce the guaranty, if it establishes an absolute and unconditional guaranty, an obligation to pay the underlying debt, and nonperformance.  And the Plaintiff contends that it has met this burden by demonstrating first, that the Defendants absolutely and unconditionally guaranteed payment of the amounts due under the Loan Documents if the Debtor files for bankruptcy; second, that the Debtor filed for bankruptcy; and third, that the Defendants did not make payment.

The Defendants argue that they are not liable as guarantors because the Indemnity Agreement is not a guaranty and because the action is barred by an exculpation clause and other terms in the Loan Documents.  They also contend that there is a genuine dispute of material fact as to their intent to enter into a guaranty.  And they argue that even if they are liable, the Plaintiff

is not entitled to recover default interest, and the guaranty should not be enforced until this Court determines the Debtor's obligations to the Plaintiff in the bankruptcy case.

The Defendants also argue that this action is barred by the election of remedies rule in Section 1301(3) of New York State's Real Property Actions and Proceedings Law ("RPAPL"). And they ask this Court to stay this action pending the outcome of the confirmation hearings in the bankruptcy case.

Based on the entire record, and for the reasons stated below, this Court finds that the Plaintiff is entitled to summary judgment on the first count of the Complaint. There is no genuine dispute as to a material fact that the Defendants absolutely and unconditionally guaranteed payment of the debt due under the Loan Documents if the Debtor filed a petition for bankruptcy, that the Debtor filed a bankruptcy petition, and that the Defendants did not make payment. The Court also finds that this action is not barred by RPAPL Section 1301(3), and that the Defendants have not established grounds for a stay.

## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(c)(1). The following are the Court's proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033.

## Background

The Debtor owns and operates a mixed-use building consisting of 74 residential units and two commercial units in Williamsburg, Brooklyn (the "Property"). Ch. 11 Pet., Bankr. Case No. 09-43576, ECF No. 1. The Defendants each own a 50 percent equity interest in the Debtor. Ch. 11 Pet. The Plaintiff is U.S. Bank National Association, as Trustee for the Registered Holders of

J.P. Morgan Chase Commercial Mortgage Securities Trust 2007-LDP11 Commercial Mortgage Pass-Through Certificates, Series 2007-LDP11, acting by and through its Special Servicer CWCapital Asset Management LLC.

The parties do not dispute that on April 19, 2007, the Debtor executed the Loan Documents in favor of UBS Real Estate Securities Inc., and on that same day, the Defendants executed the Indemnity Agreement in favor of UBS. Defs' Resp. Pl's Undisputed Material Facts ¶¶ 1-3, Bankr. Adv. Pro. No. 11-01455, ECF No. 13. They also do not dispute that as a result of certain assignments and mergers, the Plaintiff, as Trustee for the Trust, is the present holder of these interests. Defs' Resp. Pl's Undisputed Material Facts ¶¶ 4-7. And the parties do not dispute that the Indemnity Agreement and the Loan Documents are governed by New York law. Indem. Agreement § 22, Bankr. Adv. Pro. No. 11-01455, ECF No. 1-6; Note Art. 16, Bankr. Adv. Pro. No. 11-01455, ECF No. 1-2; Mortg. § 18.1, Bankr. Adv. Pro. No. 11-01455, ECF No. 1-14, 1-15.

### The Foreclosure Proceeding

The Debtor defaulted under the Loan Documents by not making the full monthly payment due from September 10, 2008 through December 10, 2008, and in January 2009, the Plaintiff accelerated the debt and brought a foreclosure action in the District Court. Am. Compl. ¶ 14, Dist. Case No. 09-00411, ECF No. 7; Joint Statement ¶ 4, Bankr. Case No. 09-43576, ECF No. 260. The amended complaint in that action names the Debtor, the Defendants, Broadway Bank, and the City of New York as defendants. The Plaintiff alleges that the Debtor defaulted and that it is entitled to foreclose, and also alleges that the Defendants are parties to the Indemnity Agreement and that if the amounts due are not satisfied by the foreclosure proceeding,

3

the Defendants are liable for any deficiency.

The District Court entered an order appointing a receiver on February 11, 2009, granted the Plaintiff's motion for summary judgment on April 24, 2009, and scheduled a conference to address the appointment of a referee.  Dist. Case No. 09-00411, ECF Nos. 12, 20.  On April 30, 2009, the Debtor filed for relief in this Court under Chapter 11 of the Bankruptcy Code.  Ch. 11 Pet.; Defs' Resp. Pl's Undisputed Material Facts ¶ 8.  As a result of the Debtor's bankruptcy case, the foreclosure proceeding was automatically stayed under Bankruptcy Code Section 362(a), and a referee was not appointed.

*The Debtor's Bankruptcy Case*

Some background as to the Debtor's Chapter 11 bankruptcy case is helpful to an understanding of the issues presented by this motion.  The Debtor has operated its business and managed its property as a debtor in possession since the petition date.  The Debtor lists two secured creditors, the Plaintiff and Broadway Bank, which holds a second mortgage on the Property, in its bankruptcy schedules.  Schedule D, Bankr. Case No. 09-43576, ECF No. 24. The Debtor schedules the Plaintiff's claim as $29 million, and Broadway Bank's claim as $1.5 million.  The Debtor also schedules two unsecured nonpriority claims totaling $24,200. Schedule F, Bankr. Case No. 09-43576, ECF No. 41.

Six creditors filed proofs of claim, including the Plaintiff, Broadway Bank, the receiver, and the receiver's counsel.[1]  The unsecured creditors listed on the Debtor's schedules did not file proofs of claim, but voted in favor of the Debtor's Chapter 11 plan of reorganization (the

---

[1]  The New York State Department of Labor filed a claim that does not indicate the amount owed, and the New York State Department of Taxation and Finance filed a claim in the amount of $10.10 and another for $500.

4

"Plan"). Plan Ballots, Bankr. Case No. 09-43576, ECF No. 142. The claims of the receiver and

his counsel were resolved by Order dated September 22, 2009. Bankr. Case No. 09-43576, ECF

No. 80. And Broadway Bank's claim of some $1.5 million is treated without objection as

unsecured under the Plan. Plan ¶¶ 3.8, 3.9, Bankr. Case No. 09-43576, ECF No. 297.

As such, the Debtor's principal creditor, and the only creditor to oppose confirmation of

the Plan, is the Plaintiff. The Plaintiff objects to the Debtor's use of the Property's rental income

as cash collateral, and moved for relief from the automatic stay and to dismiss the bankruptcy

case. The Debtor objected to the Plaintiff's claim, and that objection is addressed in a

Memorandum Decision of this Court. *See In re South Side House, LLC*, 451 B.R. 248 (Bankr.

E.D.N.Y. 2011), *aff'd sub nom. U.S. Bank Nat'l Ass'n v. South Side House, LLC*, 2012 WL

273119 (E.D.N.Y. Jan. 30, 2012).

The Debtor has been authorized to use the Property's rental income to make post-petition

payments to the Plaintiff since the first week of the bankruptcy case, pursuant to orders entered

from time to time on consent of the Plaintiff and Broadway Bank concerning the use of cash

collateral. Bankr. Case No. 09-43576, ECF Nos. 9, 51, 93. While the Plaintiff initially objected

to the Debtor's application to use cash collateral, the matter was resolved consensually and an

order to that effect was entered without objection (the "Cash Collateral Order"). Cash Collateral

Order, Bankr. Case No. 09-43576, ECF No. 51.

The Cash Collateral Order states that "[t]he Rents, together with any other income,

receipts or revenues received by the Debtor, constitute cash collateral of the [Plaintiff] and

Broadway Bank within the meaning of Section 363(a) of the Bankruptcy Code . . . ." Cash

Collateral Order ¶ H. It directs the Debtor to make monthly payments of $155,000 to be used by

the Plaintiff for real estate taxes and insurance, and provides that the balance will "be applied to the indebtedness, as ultimately directed by the Court or as agreed by the parties." Cash Collateral Order ¶ 8.

On April 25, 2011, the Plaintiff filed an objection to the Debtor's application to extend permission to use cash collateral, as well as a cross-motion to turn over the rents. Bankr. Case No. 09-43576, ECF No. 234. In that objection, the Plaintiff argues that the rents are not property of the estate because they were absolutely assigned to it, and that even if the assignment is not absolute, it took sufficient prepetition steps to make the assignment enforceable. As a result, the Plaintiff argues, the Debtor may not use the rents except for uses to which the Plaintiff consents. After hearings on the matter, the Debtor's permission to use cash collateral was extended by Stipulation and Order dated May 11, 2011. Bankr. Case No. 09-43576, ECF No. 246. The parties continue to dispute how the Debtor's payments to the Plaintiff should be applied to the Plaintiff's claim.

The Debtor's disclosure statement for its Chapter 11 plan was approved by the Court without objection on March 15, 2010. The Plan provides for payment to three classes of claims and interests. Class 1 consists of the allowed secured claim of the Plaintiff, Class 2 consists of allowed unsecured claims, and Class 3 consists of the equity interests of the Debtor. Plan ¶¶ 2.1-2.4. The claims in Class 2 are Broadway Bank's claim of over $1.5 million, any deficiency claim of the Plaintiff, and $17,000 in claims made by the Debtor's contractors. Plan ¶¶ 3.8, 3.9.

The Plan is funded in part by contributions from the Defendants. These contributions include a $200,000 payment to the Plaintiff, $250,000 for any renovations required on the building, and the amount necessary to pay the Debtor's attorneys' fees in excess of $250,000.

6

Plan ¶ 3.10; 11/16/11 Tr. 77:4-24, Bankr. Case No. 09-43576, ECF No. 346; Proposed Plan

Modifications ¶ 2, Bankr. Case No. 09-43576, ECF No. 361.  In addition, the Defendants'

management company, South Side Associates, has not collected management fees from the

Debtor during the pendency of the bankruptcy case, and the Defendants will not collect these

management fees during the first year of the Plan.  11/16/11 Tr. 78:1-10; Proposed Plan

Modifications ¶ 4.

The Plan also provides that the Debtor will make payments of over $150,000 a month to

the Plaintiff from the Property's rental income.  Plan ¶ 3.2.  The Plan contemplates that the

Debtor will receive a credit for its payments to the Plaintiff from rental income during the

pendency of this case.  Plan ¶ 3.1.  And the Plan proposes to release the Plaintiff's claims against

the Defendants, but the Debtor also proposes to amend the Plan to provide that if this Court finds

that the release "is not valid, the Plan is amended to delete such provision."  Proposed Plan

Modifications ¶ 8.

The Plaintiff objects to the Plan on several grounds, including that the Debtor cannot use

the rental income to fund the plan because it is not property of the estate, and that the post-

petition payments made from the rents do not reduce its claim.  The Plaintiff also argues that the

proposed release of the Defendants is impermissible.  Trial on the confirmation of the Plan took

place over eight days from August 12, 2011 to January 4, 2012, and the record remains open for

the parties' post-trial submissions and other matters.

### *The District Court Action*

On June 10, 2011, the Plaintiff sought permission from the District Court to amend its

complaint to add claims against the Defendants under the Indemnity Agreement.  Dist. Case No.

7

09-00411, ECF No. 36.  The Plaintiff noted that the Defendants may contend that those claims are barred by RPAPL Section 1301(3), and argued that Section 1301(3) does not prevent the action.

On June 20, 2011, the Debtor responded, stating that "there are administrative convenience issues involved here.  Any decision by this Court would leave open the Bankruptcy law issue of whether the Plan may properly discharge this obligation" as well as the questions of an injunction under Bankruptcy Code Section 105 and referral of the action to this Court.  Dist. Case No. 09-00411, ECF No. 38.  The Plaintiff replied that same day, arguing that the Defendants were already parties to the foreclosure action, and that to the extent RPAPL Section 1301(3) applies, the District Court would have to decide whether to grant the Plaintiff permission to pursue the action.  Dist. Case No. 09-00411, ECF No. 39.  The Plaintiff also observed that the Debtor's concerns about harm to its Chapter 11 case could be raised in this Court by a request for an injunction under Section 105(a).  And on June 21, 2011, the Debtor replied that the proposed release of the Defendants was before this Court, and that claims against the Defendants also should be brought in this Court.  Dist. Case No. 09-00411, ECF No. 40.

On June 21, 2011, the District Court held a hearing at which counsel for the Plaintiff, the Defendants, and the Debtor appeared and were heard, and issued a Minute Entry and Order granting the Plaintiff "leave to file a new action against [the Defendants] in their capacity as guarantors of the mortgage debt . . . ."  6/22/11 Minute Order, Second Supp. Knob Decl. Exh. A, Bankr. Adv. Pro. No. 11-01455, ECF No. 17-2.  At the hearing, the District Court observed, "[s]o could I, under the Real Property Actions and Proceedings Law just say you were hereby granted permission to sue on the guarantees in a separate action?  You would then bring that

8

separate action and it would then go to me." 6/21/11 Tr. 5:14-18, Second Supp. Knob Decl. Exh. B. And the District Court also stated "you're granted leave. Commence a new action, designate me. It will be heard." 6/21/11 Tr. 16:11-12, Second Supp. Knob Decl. Exh. B.

On June 28, 2011, the Plaintiff filed its Complaint and asserted causes of action for an action on a guaranty and breach of contract against the Defendants. Compl. Dist. Case No. 11-03086, ECF No. 1. The Plaintiff moved for summary judgment, and the Defendants opposed the motion and cross-moved for an order referring the action to this Court. Dist. Case No. 11-03086, ECF Nos. 6, 8. In their opposition and cross-motion, the Defendants argue that the District Court lacks subject matter jurisdiction, the Indemnity Agreement and Loan Documents were not lawfully assigned, and the action should be referred to this Court. Alternatively, the Defendants argue that the District Court should hold a hearing on damages. The Defendants did not assert a defense under the RPAPL, and the Debtor did not ask this Court to enjoin the action under Bankruptcy Code Section 105(a).

On October 12, 2011, the District Court issued a decision and order referring the action to this Court for proposed findings of fact and conclusions of law. Order Referring Case at 4, Dist. Case No. 11-03086, ECF No. 16.

*The Adversary Proceeding*

This Court held an initial pre-trial conference in this action on December 5, 2011, and set a schedule to hear this motion. Bankr. Adv. Pro. No. 11-01455, ECF No. 5. On December 12, 2011, the Plaintiff filed its motion, and later filed a Statement of Undisputed Facts. Pl's Mem., Bankr. Adv. Pro. No. 11-01455, ECF No. 6; Pl's Undisputed Material Facts, Bankr. Adv. Pro. No. 11-01455, ECF No. 9. On December 27, 2011, the Defendants filed a Memorandum of Law

in opposition to the Plaintiff's motion, a response to the Plaintiff's Statement of Undisputed

Material Facts, and an Answer.  Answer, Bankr. Adv. Pro. No. 11-01455, ECF No. 11; Defs'

Mem., Bankr. Adv. Pro. No. 11-01455, ECF No. 12; Defs' Resp. Pl's Undisputed Material Facts.

On January 19, 2012, the Plaintiff filed a Reply.  Pl's Reply, Bankr. Adv. Pro. No. 11-01455,

ECF No. 17.  The Defendants filed a letter supplementing their opposition on February 3, 2012,

and the Plaintiff filed a letter in response on February 10, 2012.  Bankr. Adv. Pro. No. 11-01455,

ECF Nos. 18, 19.

On January 5, 2012, the Plaintiff's counsel filed a letter seeking, on consent, an

adjournment of a pre-trial hearing, and requesting a date for oral argument.  The letter states that

"[n]o discovery has been served and the parties do not anticipate serving any discovery prior to

the disposition of the summary judgment motion."  Bankr. Adv. Pro. No. 11-01455, ECF No. 15.

On February 14, 2012, the Court held a hearing at which the Plaintiff and the Defendants, by

counsel, appeared and were heard, and the Court reserved decision.

### Discussion

This motion for summary judgment is governed by Federal Rule of Civil Procedure 56,

made applicable to this action by Bankruptcy Rule 7056.  It also requires the Court to consider

general principles of contract interpretation, the validity of contract provisions calling for an

increased rate of interest upon default, the effect of bankruptcy filings on the liability of non-

debtor guarantors, New York's Real Property Actions and Proceedings Law, actions to enforce

guaranties, and stays of adversary proceedings against non-debtor parties.

*The Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 2012 WL 695537, at *3 (2d Cir. Mar. 6, 2012). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

To make this assessment, "a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). Summary judgment is appropriate only when, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).

Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to any material fact for trial. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, it must present "significant probative evidence" that a genuine dispute as to a material fact exists. *Anderson*, 477 U.S. at 249 (internal quotation marks omitted).

Statements in the pleadings alone are not sufficient to meet this burden. Rather,

11

"[e]stablishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived 'to put up or shut up.'" *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003)), *aff'd sub nom. Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 Fed. Appx. 197 (2d Cir. 2010).  As such, "[u]nsupported allegations in the pleadings . . . cannot create a material issue of fact." *Eugenia*, 649 F. Supp. 2d at 117 (citing *Weinstock*, 224 F.3d at 41).

"Summary judgment is appropriate on a contract claim under New York law where 'the intent of the parties can be determined from the face of the agreement.'" *HSH Nordbank AG N.Y. Branch v. Street*, 421 Fed. Appx. 70, 72 (2d Cir. 2011) (quoting *Katel Ltd. Liab. Co. v. AT&T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010)).  And damages may be determined on summary judgment when the amounts can be calculated based on the undisputed facts.  *See AEP Energy Servs. Gas Holding Co. v. Bank of Am.*, 626 F.3d 699, 740 (2d Cir. 2010); *GCCFC 2006-GG7 Westheimer Mall, LLC v. Okun*, 2008 WL 3891257, at *3 (S.D.N.Y. Aug. 21, 2008).

*Contract Interpretation Under New York Law*

Perhaps the most fundamental principle of contract construction is that "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms . . . ." *Signature Realty, Inc. v. Tallman*, 2 N.Y.3d 810, 811, 718 N.Y.S.2d 259, 260 (N.Y. Ct. App. 2004) (internal quotation marks omitted).  *See Salvano v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 85 N.Y.2d 173, 182, 623 N.Y.S.2d 790, 794 (N.Y. Ct. App. 1995) (observing that "[t]he court's role is limited to interpretation and enforcement of the terms agreed to by the parties; it does not include the rewriting of their contract and the imposition of

additional terms"); *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992) (stating that "[a] court may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case") (internal citations omitted).

In interpreting a contract, the court's initial inquiry "is whether the agreement on its face is reasonably susceptible of more than one interpretation" and "matters extrinsic to the agreement may not be considered when the intent of the parties can be gleaned from the face of the instrument." *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 572-73, 498 N.Y.S.2d 344, 346 (N.Y. Ct. App. 1986) (internal quotation marks omitted). An agreement is "ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs . . . and terminology as generally understood in the . . . business." *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993) (internal quotation marks omitted). An agreement is not ambiguous "when contract language has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Sayers*, 7 F.3d at 1095 (internal quotation marks omitted).

Against this background, the court's role is neither more nor less than to "determine whether [specific] clauses are ambiguous when read in the context of the entire agreement." *Id.* (internal quotation marks omitted). "General canons of contract construction require that where two seemingly conflicting contract provisions reasonably can be reconciled, a court is required to do so and to give both effect." *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 69

13

(2d Cir. 2002) (internal quotation marks omitted). *See In re Vanderveer Estates Holdings, Inc.*, 283 B.R. 122, 130-31 (Bankr. E.D.N.Y. 2002) (observing that "[a]greements should not be interpreted in a way that renders any of the provisions superfluous or meaningless"). "It is an elementary rule of contract construction that clauses of a contract should be read together contextually in order to give them meaning . . . ." *HSBC Bank USA v. Nat'l Equity Corp.*, 279 A.D.2d 251, 253, 719 N.Y.S.2d 20, 22 (N.Y. App. Div. 1st Dep't 2001). *See Sayers*, 7 F.3d at 1095 (stating that "[b]y examining the entire contract, we safeguard against adopting an interpretation that would render any individual provision superfluous"). And ambiguity in a contract is interpreted against the drafter. *See, e.g.*, *McCarthy v. Am. Int'l Group, Inc.*, 283 F.3d 121, 124 (2d Cir. 2002).

<u>*Default Interest Under New York Law*</u>

As this Court has already found in the Debtor's bankruptcy case, "[u]nder New York law, '[i]t is well settled that an agreement to pay interest at a higher rate in the event of default or maturity is an agreement to pay interest and not a penalty.'" *South Side House*, 451 B.R. at 264 (quoting *Jamaica Sav. Bank v. Ascot Owners, Inc.*, 245 A.D.2d 20, 20, 665 N.Y.S.2d 858, 858 (N.Y. App. Div. 1st Dep't 1997)). *See Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959) (observing that "[a] variable interest provision in event of a stated default . . . is not a penalty, nor should it be considered unconscionable. It can be beneficial to a debtor in that it may enable him to obtain money at a lower rate of interest than he could otherwise obtain it") (internal citations omitted), *cert. denied*, 361 U.S. 947 (1960). It is also well established that "contractual provisions providing for an increased interest rate on default are enforceable under New York law." *U.S. Trust Co. of N.Y. v. LTV Steel Co. (In re Chateaugay Corp.)*, 150 B.R. 529, 542

14

(Bankr. S.D.N.Y. 1993), *aff'd*, 170 B.R. 551 (S.D.N.Y. 1994).  Applying this law, this Court determined that the Plaintiff was entitled to include default interest in its claim.  *See South Side House*, 451 B.R. at 264.

<u>*The Bankruptcy Code and Non-Debtor Guarantors*</u>

As several courts have noted, a "'bankruptcy proceeding is meant to protect the debtor, not third-party guarantors.'"  *Schumacher v. White*, 429 B.R. 400, 408 (E.D.N.Y. 2010) (quoting *In re Lamar Estates, Inc.*, 5 B.R. 328, 331 (Bankr. E.D.N.Y. 1980)).  For example, the discharge of debts under Bankruptcy Code Section 524 does not apply to non-debtors.  *See* 11 U.S.C. § 524(e) (stating that the "discharge of a debt of the debtor does not affect the liability of any other entity . . . for such debt"); *Credit Suisse First Bost. Mortg. Capital v. Cohn*, 2004 WL 1871525, at *8 (S.D.N.Y. Aug. 19, 2004) (finding that a debtor's discharge did not affect the liability of a non-debtor guarantor).  Likewise, the limitations on unmatured interest and post-petition interest under Bankruptcy Code Sections 502(b)(2) and 506(b) do not apply to claims against non-debtors.  *See, e.g.*, *Ground Improvement Techniques, Inc. v. Plan Comm. (In re Washington Group Int'l)*, 460 B.R. 280, 288 (D. Nev. 2011) (finding that Section 502(b)(2) "applies only to claims made against the bankruptcy estate") (citing cases); *Cohn*, 2004 WL 1871525, at *8 (finding that guarantor was liable for post-petition interest, fees, and costs).

Bankruptcy Code Section 1123 permits a debtor to modify claims in a Chapter 11 plan, and Section 1129 allows courts to confirm such a plan over the objection of an impaired claim holder when certain conditions are met.  *See* 11 U.S.C. §§ 1123, 1129.  As one court found, a non-debtor guarantor's "obligation is not affected in any way by the cram-down provision of the Bankruptcy Code."  *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1449 (6th Cir.

15

1993).

Viewed another way, while a bankruptcy case may result in the discharge of the debtor's obligations or impair the claim of a creditor, a non-debtor guarantor's liability is not modified by the bankruptcy process, and the creditor retains its rights against the non-debtor guarantor outside of the bankruptcy case. *See, e.g.*, *Cohn*, 2004 WL 1871525, at *8 (stating that the "discharge of liability pursuant to the bankruptcy laws generally does not affect a guarantor's liability and leaves a creditor free to pursue collection from a guarantor"); *Stoller's, Inc. v. People's Trust Bank (In re Stoller's Inc.)*, 93 B.R. 628, 635-36 (Bankr. N.D. Ind. 1988) (stating that "bankruptcy proceedings do not affect the liabilities of co-debtors and guarantors").

### New York RPAPL Section 1301(3)

New York law restricts the ability of a lender to bring more than one action to recover on the same mortgage debt. RPAPL Section 1301(3) provides that "[w]hile the action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgaged debt, without leave of the court in which the former action was brought." RPAPL § 1301(3). This election of remedies rule applies to actions against guarantors of mortgage loans. *See Resolution Trust Corp. v. J.I. Sopher & Co.*, 1997 WL 100879, at *2 n.2 (2d Cir. Mar. 6, 1997) (citing *Mfrs. Hanover Trust Co. v. 400 Garden City Assocs.*, 150 Misc. 2d 247, 249-50, 568 N.Y.S.2d 505, 507 (N.Y. Sup. Ct. Nassau Co. 1991)). The purpose of this rule is "to avoid multiple actions to recover the same debt and to confine the proceedings to collect the mortgage debt to one court and one action." *Contemporary Mortg. Bankers, Inc. v. High Peaks Base Camp, Inc.*, 156 B.R. 890, 894-95 (N.D.N.Y. 1993).

As a general rule, a plaintiff must obtain leave of court to file a second action to collect

the same debt. *See Mfrs. Hanover Trust Co.*, 150 Misc. 2d at 249-50, 568 N.Y.S.2d at 507. Typically, a request for leave should be made in the court in which the first action was brought. *See* RPAPL § 1301(3); *Putnam Cnty. Sav. Bank v. Bagen (In re Bagan)*, 185 B.R. 691, 699 (Bankr. S.D.N.Y. 1995); *Citibank v. Covenant Ins. Co.*, 150 Misc. 2d 129, 135, 567 N.Y.S.2d 983, 987 (N.Y. Sup. Ct. Rockland Co. 1991).

Courts permit a separate action upon a showing of special circumstances. *See Resolution Trust Corp.*, 1997 WL 100879, at *2 (citing cases); *Rainbow Venture Assocs. v. Parc Vendome Assocs.*, 221 A.D.2d 164, 164, 633 N.Y.S.2d 478, 479 (N.Y. App. Div. 1st Dep't 1995); *Mfrs. Hanover Trust Co.*, 150 Misc. 2d at 249-50, 568 N.Y.S.2d at 507 (citing cases). Whether special circumstances exist "is regulated by consideration of equitable principles on a case by case basis . . . ." *Stein v. Nellen Dev. Corp.*, 123 Misc. 2d 268, 271, 473 N.Y.S.2d 331, 332-33 (N.Y. Sup. Ct. Suffolk Co. 1984). *See Rose v. Gershman*, 93 Misc. 2d 524, 525, 402 N.Y.S.2d 921, 922 (N.Y. Sup. Ct. N.Y. Co. 1978) (noting that the decision "is a matter of discretion and turns upon equitable principles"). As the statute is "'in derogation of a plaintiff's common law right to pursue the alternate remedies of foreclosure and an action on the debt,'" New York courts have held that it must be "'strictly construed.'" *Les Placements v. Rosenberg*, 1997 WL 1048897, at *3 (E.D.N.Y. Dec. 1, 1997) (quoting *Dollar Dry Dock Bank v. Piping Rock Builders, Inc.*, 181 A.D.2d 709, 710, 581 N.Y.S.2d 361, 362-63 (N.Y. App. Div. 2d Dep't 1992)).

Courts have found special circumstances to be present in several contexts, including where the mortgagee may not receive a full recovery in the foreclosure action or where the actions address different questions of fact, law, and proof. *See, e.g.*, *Bagen*, 185 B.R. at 698; *Rainbow Venture Assocs.*, 221 A.D.2d at 164, 633 N.Y.S.2d at 479; *Dollar Dry Dock Bank*, 181

17

A.D.2d at 710, 581 N.Y.S.2d at 362.

Courts have declined to find special circumstances in a variety of circumstances, including in the context of bankruptcy cases.  *See, e.g.*, *Mfrs. Hanover Trust Co.*, 150 Misc. 2d at 249-50, 568 N.Y.S.2d at 507 (noting that it was not "holding that bankruptcy may never rise to the level of 'special circumstances' [but that] under the facts presented in this case, the court is constrained to hold plaintiff to its election of remedies and deny its request" for leave); *Putnam Cnty. Sav. Bank v. Allview Estates, Inc.*, 237 A.D.2d 591, 592, 655 N.Y.S.2d 639, 640 (N.Y. App. Div. 2d Dep't 1997) (finding that special circumstances did not exist where the plaintiff did not "seek leave of the United States Bankruptcy Court to vacate or otherwise modify the automatic stay granted to the mortgagors . . . in order to seek a deficiency judgment against the mortgagors").

*Guaranties Under New York Law*

New York State courts have long recognized that when a party guarantees payment of a debt, as opposed to collection of a debt, the guaranty is absolute and unconditional.  *See, e.g.*, *McMurray v. Noyes*, 72 N.Y. 523, 525 (N.Y. Ct. App. 1878); *N.Y.C. Dep't of Fin. v. Twin Rivers, Inc.*, 920 F. Supp. 50, 53 (S.D.N.Y. 1996) (citing decisions of New York State courts). As explained more than 130 years ago by the New York Court of Appeals:

> The fundamental distinction between a guaranty of payment and one of collection is, that in the first case the guarantor undertakes unconditionally that the debtor will pay, and the creditor may, upon default, proceed directly against the guarantor, without taking any steps to collect of the principal debtor, and the omission or neglect to proceed against him is not (except under special circumstances) any defense to the guarantor; while in the second case the undertaking is that if the demand cannot be collected by legal proceedings the guarantor will pay, and consequently legal proceedings against the principal debtor, and a failure to collect of him by those means are conditions precedent to the liability of the guarantor . . . .

*McMurray*, 72 N.Y. at 524-25.

The interpretation of a guaranty is governed by the same principles that govern the interpretation of other forms of contract. *See Gen. Phoenix Corp. v. Cabot*, 300 N.Y. 87, 92, 89 N.E.2d 238, 241 (N.Y. Ct. App. 1949). The parties' intention, as expressed in the text of the agreement, determines whether or not the guaranty is absolute or conditional. *See Gen. Phoenix Corp.*, 300 N.Y. at 92, 89 N.E.2d at 241; *Twin Rivers*, 920 F. Supp. at 52-53. Guaranties "must be strictly construed according to their terms" and the "guarantor's obligation must be 'narrowly construed and cannot be extended by construction beyond the plain and explicit language of the contract.'" *Chase Manhattan Bank v. Am. Nat'l Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1073-74 (2d Cir. 1996) (quoting *Key Bank of Long Island v. Burns*, 162 A.D.2d 501, 503, 556 N.Y.S.2d 829, 830 (N.Y. App. Div. 2d Dep't 1990)).

Courts enforce absolute guarantees that include waivers of defenses and counterclaims. As one court has noted, "[a]bsolute and unconditional guaranties . . . are consistently upheld by New York courts" and "unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims." *First N.Y. Bank for Bus. v. DeMarco*, 130 B.R. 650, 654 (S.D.N.Y. 1991). *See Citibank v. Plapinger*, 66 N.Y.2d 90, 93, 495 N.Y.S.2d 309, 310 (N.Y. Ct. App. 1985); *European Am. Bank v. Lofrese*, 182 A.D.2d 67, 73, 586 N.Y.S.2d 816, 819 (N.Y. App. Div. 2d Dep't 1992); *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, 2008 WL 465169, at *3 (S.D.N.Y. Feb. 6, 2008).

As a general rule, absolute guaranties containing waivers of demand and notice to the guarantor are enforceable, and demand is not required. *See, e.g.*, *Asia Pulp & Paper Co.*, 2008 WL 465169, at *3; *Bank of Am. v. Solow*, 59 A.D.3d 304, 304-05, 874 N.Y.S.2d 48, 49 (N.Y.

19

App. Div. 1st Dep't 2009); *Judarl, L.L.C. v. Cycletech, Inc.*, 246 A.D.2d 736, 737, 667 N.Y.S.2d 451, 452 (N.Y. App. Div. 3d Dep't 1998). A demand for payment is not a condition precedent to asserting a claim when it has been explicitly waived, even if other provisions in the guaranty contain conflicting or inconsistent terms stating that payment shall be made upon notice and demand. *See Phoenix Acquisition Corp. v. Campcore, Inc.*, 81 N.Y.2d 138, 144, 596 N.Y.S.2d 752, 755 (N.Y. Ct. App. 1993) (citing *Barhydt v. Ellis*, 45 N.Y. 107, 109-10 (N.Y. Ct. App. 1871)); *Battery Assocs., Inc. v. J & B Battery Supply, Inc.*, 944 F. Supp. 171, 177 (E.D.N.Y. 1996) (citing *United States v. Birngold Realty Co.*, 211 F. Supp. 934, 940 (S.D.N.Y. 1962), *aff'd sub nom. United States v. Schildaus*, 316 F.2d 240 (2d. Cir.), *cert. denied*, 375 U.S. 830 (1963)).

"When a guarantor has given an unconditional guaranty, its liability is clear as a matter of law." *Boco Enters. v. Saastopankkien Kesus-Osake-Pankki (In re Boco Enters.)*, 204 B.R. 407, 415 (Bankr. S.D.N.Y. 1997) (citing *Milliken & Co. v. Stewart*, 182 A.D.2d 385, 387, 582 N.Y.S.2d 127, 128 (N.Y. App. Div. 1st Dep't 1992)). And "liability under a guaranty depends on the terms of the underlying promissory note." *Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS, S.A. de C.V.*, 536 F. Supp. 2d 345, 350 (S.D.N.Y. 2008).

A debtor's bankruptcy case does not relieve a guarantor of its liability under the guaranty. *See Milliken & Co.*, 182 A.D.2d at 386, 582 N.Y.S.2d at 128; *Marine Bank v. Woodworth*, 158 A.D.2d 953, 953, 551 N.Y.S.2d 113, 114 (N.Y. App. Div. 4th Dep't 1990) (citing *Union Trust Co. of Rochester v. Willsea*, 275 N.Y. 164, 167-68 (N.Y. Ct. App. 1937)). Similarly, the automatic stay does not prevent a creditor from proceeding against a non-debtor guarantor. *See Milliken & Co.*, 182 A.D.2d at 386; *Lamar Estates*, 5 B.R. at 330.

And New York law permits the enforcement of agreements that impose liability on

guarantors when a borrower files for bankruptcy.  *See First Nationwide Bank v. Brookhaven Realty Assocs.*, 223 A.D.2d 618, 621, 637 N.Y.S.2d 418, 421 (N.Y. App. Div. 2d Dep't) (stating that "[a]s a bankruptcy default clause is enforceable under the laws of this State, the one at issue here should be enforced" and that its "enforcement . . . is neither inequitable, oppressive, or unconscionable"), *appeal dismissed*, 88 N.Y.2d 963 (N.Y. Ct. App. 1996) (internal citations omitted); *Bank of Am. v. Lightstone Holdings, LLC*, 2011 WL 4357491, at *6 (N.Y. Sup. Ct. N.Y. Co. July 14, 2011) (enforcing guaranty that made guarantors liable upon the borrower's bankruptcy filing); *UBS Commercial Mortg. Trust 2007-FL1 v. Garrison Special Opportunities Fund L.P.*, 2011 WL 4552404, at *4-6 (N.Y. Sup. Ct. N.Y. Co. Mar. 8, 2011) (same); *Okun*, 2008 WL 3891257, at *3 (applying New York law and granting plaintiff's motion for summary judgment on guaranty that provided that guarantor would become personally liable if borrower defaulted and filed for bankruptcy).[2]

*The Elements of an Action To Enforce a Guaranty*

The elements of an action to enforce an absolute guaranty are the existence of an executed absolute and unconditional guaranty, an obligation to pay the underlying debt, and the failure to pay according to the terms of that agreement.  *See, e.g.*, *Phoenix Acquisition Corp.*, 81 N.Y.2d at 142, 596 N.Y.S.2d at 753 (discussing term that required "'full and prompt payment . . . when due'" of the principal obligor's "'indebtedness,'" and finding that guarantor "became

---

[2]  Such agreements should be distinguished from "ipso facto" clauses that are triggered by a debtor's bankruptcy.  Under bankruptcy law, clauses that "seek to modify the relationships of contracting parties due to the filing of a bankruptcy petition . . . . are, as a general matter, unenforceable."  *Lehman Bros. Special Fin. Inc. v. BNY Corp. Tr. Servs. Ltd. (In re Lehman Bros. Holdings Inc.)*, 422 B.R. 407, 414-15 (Bankr. S.D.N.Y. 2010) (citing Bankruptcy Code Section 365(e)).

explicitly and contractually liable only for sums which were due and payable" at the time of the default); *Kensington House Co. v. Oram*, 293 A.D.2d 304, 305, 739 N.Y.S.2d 572, 572-73 (N.Y. App. Div. 1st Dep't 2002); *Banner Indus. v. Key B.H. Assocs.*, 170 A.D.2d 246, 246, 565 N.Y.S.2d 456, 456 (N.Y. App. Div. 1st Dep't 1991).

In order to establish a prima facie entitlement to summary judgment against a guarantor on an absolute guaranty, a lender "need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *Kensington House Co.*, 293 A.D.2d at 305, 739 N.Y.S.2d at 572. *See Inland Mortg. Capital Corp. v. Realty Equities NM, LLC*, 71 A.D.3d 1089, 1090, 900 N.Y.S.2d 79, 80 (N.Y. App. Div. 2d Dep't 2010) (same); *City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71, 681 N.Y.S.2d 251, 253 (N.Y. App. Div. 1st Dep't 1998) (same); *Valley Nat'l Bank v. Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 453 (S.D.N.Y. 2003) (same). Where a guaranty obligates the guarantor to pay sums due under an agreement entered into by the principal obligor, courts will look to the agreement with the principal to determine the amount that is due. *See, e.g.*, *Kensington House Co.*, 293 A.D.2d at 305, 739 N.Y.S.2d at 573.

If the plaintiff establishes its prima facie case, then the burden shifts to the defendant to show "'the existence of a triable issue of fact with respect to a *bona fide* defense.'" *Indus. Bank of Japan Trust Co. v. Haseotes*, 1993 WL 322775, at *4 (S.D.N.Y. Aug. 19, 1993) (quoting *Banner Indus.*, 170 A.D.2d at 246, 565 N.Y.S.2d at 456).

*Whether the Plaintiff Has Established a Prima Facie Entitlement to Summary Judgment*

The Plaintiff argues that it has established a prima facie case by demonstrating the existence of an absolute and unconditional guaranty, the underlying debt, and the Defendants'

22

nonperformance.

The Defendants argue that summary judgment should not be granted because the Indemnity Agreement is not an absolute and unconditional guaranty, the provisions of the parties' agreements render any guaranty unenforceable, and there is a genuine dispute as to whether they intended to enter into a guaranty. They also argue that damages cannot be fixed until the Debtor's liability is determined in the bankruptcy case, and default interest cannot be awarded to the Plaintiff. The Defendants do not dispute that they executed the Indemnity Agreement, the Debtor filed a petition for relief in this Court, and they did not make payment of the amounts sought by the Plaintiff.

The Defendants' Entry into an Absolute and Unconditional Guaranty  The Plaintiff argues that there is no genuine dispute as to a material fact that the parties entered into the Indemnity Agreement. The Plaintiff further argues that under this agreement the Defendants "have full, personal liability for the Loan by virtue of the Debtor's bankruptcy filing." Pl's Reply at 1. In support of this argument, the Plaintiff cites Section 2 of the Indemnity Agreement:

> Guaranty.
>
> (a)    Indemnitor absolutely and unconditionally guarantees to Lender the prompt and full payment of the Debt (as defined in the Security Instrument) in the event (i)(A) Borrower fil[es] a voluntary petition under the Bankruptcy Code or any other Federal or state bankruptcy or insolvency law; . . .
>
> (b)    This is a guaranty of payment and not of collection. The obligations of Indemnitor hereunder are and shall be absolute under any and all circumstances . . . .

Indem. Agreement § 2. And the Plaintiff states that this term "provides for absolute liability in the event of a bankruptcy filing." 2/14/12 Tr. 11:16-17, Bankr. Adv. Pro. No. 11-01455, ECF

23

No. 20.

The Defendants contend that the purpose of the Indemnity Agreement is to indemnify the Plaintiff with respect to certain acts of misconduct and not to guarantee performance of the Debtor's obligations to the Plaintiff.  They argue that the agreement is not designated as a guaranty, but rather as an "Indemnity Agreement," it defines the Defendants as "Indemnitor," but not as guarantors, and it refers to "indemnification, representations and warranties and other matters," but not a guaranty.  Defs' Mem. at 3, 4.  The Defendants state that this language shows that the Indemnity Agreement is "clearly designed to protect" the Plaintiff by providing indemnification "against the nine instances of misconduct enumerated in Article 14 of the Note and reiterated at length in the Indemnity Agreement."  Defs' Mem. at 3.  They argue that if the parties intended to enter into a guaranty, the agreement could easily have been titled "Indemnity Agreement and Guarantee," and that any ambiguity should be construed against the Plaintiff as the drafter of the agreement.  Defs' Mem. at 3.

The Defendants also argue that the incorporation and nonrecourse provisions of the Mortgage nullify any guaranty entered into by the Defendants.  Section 3.2, the incorporation provision, provides:

> INCORPORATION BY REFERENCE.  All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents other than the Note or this Security Instrument now or hereafter executed by Borrower and/or others and by or in favor of Lender, which wholly or partially secure or guaranty payment of the Note . . . are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein, provided that, to the extent such covenants, conditions and agreements are inconsistent with the provisions of this Security Instrument, the provisions of this Security Instrument shall control.

Mortg. § 3.2.  Section 15.1, the nonrecourse or exculpation provision, provides that with certain

24

exceptions, the Plaintiff may not seek money damages against the Debtor or its principals to enforce the obligations under the Loan Documents, but must instead seek to foreclose or take other action against the Debtor's collateral to satisfy any debt that is due.

The Defendants argue that because the guaranty term in the Indemnity Agreement is inconsistent with the exculpation clause in the Mortgage, the language in the Mortgage controls and the guaranty is not enforceable. In addition, the Defendants argue that there is a genuine dispute of material fact as to their intent to enter into a guaranty. The Defendants also state that the guaranty language was added to the Indemnity Agreement only shortly before the closing.

Here, the Defendants executed the Indemnity Agreement in their individual capacities, and under the plain terms of that agreement they absolutely and unconditionally guaranteed payment of the amounts due under the Loan Documents in the event that the Debtor files for bankruptcy protection. Section 2 states that the guaranty is absolute and unconditional and that it is a guaranty of payment, not of collection. In addition, Section 4 provides that the Plaintiff may enforce the agreement without recourse to the Loan Documents or the Property, and Section 7 sets forth a waiver of certain defenses, including the right to notice and demand. These terms, along with the other provisions of the Indemnity Agreement, are sufficient to establish an absolute and unconditional guaranty of payment under New York law.

The title "Indemnity Agreement" does not make this language any less clear. Section 2 of the Indemnity Agreement is designated "Guaranty," and describes the circumstances where the Defendants "absolutely and unconditionally guarantee[] to Lender the prompt and full payment of the Debt." Indem. Agreement § 2(a). These include the Debtor's filing of a voluntary petition for relief under the Bankruptcy Code. In addition, Section 1 of the Indemnity

Agreement, designated "Indemnification," sets forth the Defendants' agreement to "protect, defend, indemnify, release and hold Lender harmless from and against any and all Losses . . . imposed upon or incurred by or asserted against Lender" in connection with the misconduct excluded from the nonrecourse provisions in the Note and the Mortgage.  Indem. Agreement § 1. That is, the Indemnity Agreement contains terms that define the Defendants' obligation to indemnify the Plaintiff, and separate and complementary terms that provide an absolute and unconditional guaranty in the event that certain triggering conditions are met.

The Defendants' argument that the guaranty terms were added at the last minute and that they did not intend to enter into a guaranty does not raise a genuine dispute of material fact.  The language of the Indemnity Agreement is unambiguous.  And the Defendants did not offer evidence in the form of affidavits, declarations, or other proof sufficient to raise a genuine dispute of material fact as to their intent.

The exculpation and incorporation provisions in the Mortgage similarly do not render the Indemnity Agreement unenforceable, because the Indemnity Agreement is not inconsistent with the exculpation provision.  The Mortgage does not bar the Plaintiff from entering into agreements that function as exceptions to the exculpation provision, and the Indemnity Agreement, which is among different parties, states that it is an exception to any nonrecourse or exculpation provisions contained in the Loan Documents.

And even if the Indemnity Agreement did not address the nonrecourse or exculpation provisions in the Loan Documents, it still would not conflict with the terms of the Mortgage.  As the Mortgage states, it does not "affect the validity or enforceability of any guaranty made in connection with this Security Instrument or the Other Security Documents."  Mortg. § 15.1.  The

Indemnity Agreement provides that the Defendants are "fully and personally liable" and that their "liability is not limited to the original or amortized principal balance of the Loan or the value of the Property." Indem. Agreement § 4. The agreement further states that the Plaintiff "may enforce the obligations of [the Defendants] without first resorting to or exhausting any security or collateral or without first having recourse to the" Loan Documents or the Property "through foreclosure proceedings or otherwise . . . ." Indem. Agreement § 4. These terms would not be enforceable if the Plaintiff could not seek money damages against the Defendants.

To be sure, the obligation that the Defendants undertook in the guaranty, which is to make payment of the amounts due under a mortgage loan in the event that the Debtor files a bankruptcy case, is a significant one. But the Defendants are sophisticated business people, represented by counsel, and they agreed to these terms. And such terms are recognized and enforceable under New York law. That is, the terms of the parties' agreements are unambiguous, and the Defendants are bound by those terms.

Accordingly, based on the entire record, the Court finds that the Plaintiff has established a prima facie case that there is no genuine dispute as to a material fact with respect to the first element of its claim, the Defendants' entry into an absolute and unconditional guaranty.

The Defendants' Obligation To Pay the Amounts Due Under the Loan Documents  The Plaintiff argues that the Defendants' liability was triggered by the Debtor's commencement of a bankruptcy case, and that they "are in default . . . by failing to repay all sums due under the Loan Documents in accordance with their obligations under the Indemnity Agreement." Pl's Mem. at 4. The Plaintiff contends that the amounts due under the Indemnity Agreement are determined by the Loan Documents, and that as of July 20, 2011, the amount owed was at least

$33,710,671.89, exclusive of counsel fees.  That amount includes principal, accrued interest at the contract and default rates, and a special servicer fee of $186,000, reduced by credits of $185,758.71 and $3,790,174.18.  These calculations are supported by the uncontroverted declaration of its special servicer.  *See* Guggenheim Decl. Exh. A, Bankr. Adv. Pro. No. 11-01455, ECF No. 1-12.[3]

The Defendants argue that they are not obligated to make payment under the Indemnity Agreement because the Plaintiff's action is barred by the exculpation provision in Article 14 of the Note, which is substantially the same as the exculpation provision in the Mortgage.  The Defendants state that there is an exception to this exculpation provision in the event of certain misconduct, including fraud, waste, or conversion of insurance proceeds, but contend that none of those categories of misconduct is alleged in the Complaint or present here.

As to the amount due, the Defendants do not dispute the categories of damages called for under the Indemnity Agreement and the Loan Documents.  But they argue that the Plaintiff is not entitled to default interest, and that the Indemnity Agreement should not be enforced until the amount of the Debtor's obligation is determined in the bankruptcy case.  They argue that "[t]he interest rate sought upon default almost doubles the original interest rate, which was 5.575%, increasing it to 10.575%" and "[t]his increase of over 47% in the original interest rate is effectively a penalty, attempting to make it prohibitively expensive not to comply with the terms

---

[3]  The Plaintiff requests that this Court recommend to the District Court that it be granted summary judgment, and that it be permitted to submit an updated calculation of damages in connection with the District Court's entry of judgment.  The Plaintiff notes that the amounts due under the Loan Documents continue to grow, as interest, special servicer fees, and attorneys' fees and costs are incurred daily.

of the Note." Defs' Mem. at 8. And they contend that the nearly $4 million in default interest is an unenforceable penalty and not permissible liquidated damages.

The Defendants also argue that the extent of their liability is uncertain as a result of the Debtor's bankruptcy case. In particular, the Defendants note that under the Cash Collateral Order, there remains a question as to how the Debtor's monthly payments to the Plaintiff will be applied to the debt.

The Plaintiff argues that there is no genuine dispute as to a material fact concerning the applicability of the exculpation provision, because the Indemnity Agreement states that the Defendants' guaranty is an exception to that provision. In particular, Section 4 provides that "[n]otwithstanding any provision of the Note, the Security Instrument, or any of the Other Security Documents, the obligations pursuant to this Agreement are exceptions to any non-recourse or exculpation provision contained therein." Indem. Agreement § 4.

The Plaintiff also contends that the Defendants have not raised any triable issues of fact with respect to damages. The Plaintiff argues that the default interest may be awarded as a component of damages, and that this Court previously allowed default interest in connection with its claim in the Debtor's bankruptcy case under the same loan documents and law. The Plaintiff also asserts that the only authority cited by the Defendants addresses unaccrued interest, and here the Plaintiff seeks to recover accrued interest. And the Plaintiff notes that default interest of as much as 24 percent has been upheld under New York law. *See Emigrant Funding Corp. v. 7021 LLC*, 2009 WL 3530022, at *4 (N.Y. Sup. Ct. Queens Co. Oct. 26, 2009).

The Plaintiff argues that there is no uncertainty as to the extent of the Defendants' liability, because that obligation is independent of the Debtor's liability. The Plaintiff notes that

other courts have concluded that "modification of a debtor's obligations under the Bankruptcy Code, both before and after confirmation, does not affect a guarantor's absolute guaranty of the underlying indebtedness," and observes that the Defendants do not cite any contrary authority. Pl's Reply at 7. And the Plaintiff states that under the terms of the Indemnity Agreement "the Guarantors are absolutely liable and . . . their obligations are independent of the obligations of the Debtor . . . ." Pl's Reply at 9.

The Plaintiff also notes that the Defendants receive a credit for the Debtor's post-petition payments. As a result, judgment may be entered against the Defendants before a determination is made with respect to how the Debtor's post-petition payments are applied in the bankruptcy case. Here, the plain terms of the Indemnity Agreement provide that the Defendants' obligation to make "prompt and full payment of the Debt" is triggered by the Debtor filing a bankruptcy petition. Indem. Agreement § 2. It is undisputed that the Debtor commenced a bankruptcy case in this Court on April 30, 2009. The exculpation provisions in the Note and Mortgage do not shield the Defendants from personal liability for money damages, because the Indemnity Agreement states that "[n]otwithstanding any provision of the [Loan Documents] the obligations pursuant to this Agreement are exceptions to any non-recourse or exculpation provision contained" in the Loan Documents. Indem. Agreement § 4. In addition, the Indemnity Agreement provides that the Defendants' liability is "in no way limited or impaired by . . . (iii) any exculpatory provision in the" Loan Documents "limiting Lender's recourse to the Property or to any other security for the Note, or limiting Lender's rights to a deficiency judgment against Indemnitor . . . ." Indem. Agreement § 3. The Defendants' personal guaranty of the debt would be rendered an empty promise if the Plaintiff's only recourse was to the Property and it could not

collect the unpaid balance of the loan from them.[4]

In addition, the damages sought by the Plaintiff are provided for in the Loan Documents. The Indemnity Agreement states that the amount the Defendants are obligated to pay is the "Debt" as defined by the Mortgage, and the Mortgage defines the "Debt" as including the "indebtedness evidenced by the Note," interest, default interest, and other sums as set forth in the Loan Documents. Indem. Agreement § 2; Mortg. § 2.1. The principal balance is stated on the face of the Note, the Note fixes the contract interest at 5.575 percent per year, and the Note and the Mortgage provide for interest at a default rate of five percent plus the contract rate. *See* Note Arts. 2, 4; Mortg. § 10.3. The Note and the Mortgage state that the Debtor is liable for reasonable fees and expenses, including attorneys' fees, and the Mortgage provides for the payment of special servicer fees. *See* Note Art. 18; Mortg. §§ 20.1, 20.2. This is consistent with the uncontroverted declaration of the Plaintiff's special servicer, which identifies each category of damages that is claimed. *See* Guggenheim Decl. Exh. A.[5]

---

[4] The Plaintiff argues that the Defendants' reliance on the Note's exculpation provision is not supported by the terms of Article 14, which begins with the language "[e]xcept as otherwise provided herein . . . or in the Other Security Documents . . . ." Pl's Reply at 2. However, as noted by the Defendants, the exculpation provision in the Mortgage does not contain such a limitation. The Court does not rely on these provisions, because it finds that the language in the Indemnity Agreement is sufficient to exclude the guaranty from these exculpation provisions.

[5] The Defendants submitted the affidavit of Mr. Stark in the District Court stating that the amount of $3,637,687.48 in contract interest "is in error as it was calculated on a *per diem* basis by the plaintiff when it should have been calculated on a monthly basis." Stark Aff. ¶ 3, Dist. Case No. 11-03086, ECF No. 8-5. The Note states that interest is calculated based on "the actual number of days elapsed[,]" and that after default, interest accrues from the date of the default until full payment. Note Arts. 2, 4. The Plaintiff's methodology appears sound, and the total amount of damages can be calculated when judgment is entered. Mr. Stark's affidavit also disputes whether post-petition default interest should be allowed, stating that "this amount was not within plaintiff's claim in the bankruptcy case." Stark Aff. ¶ 4. This argument is not

The Plaintiff also is entitled to default interest as damages. This Court has already found that default interest is provided for under the terms of the parties' agreements. *See South Side House*, 451 B.R. at 265-66. And New York law permits the enforcement of provisions calling for a higher rate of interest upon default. *See Chateaugay Corp.*, 150 B.R. at 542.

The Cash Collateral Order and other determinations as to the amount of the Plaintiff's claim in the Debtor's bankruptcy case do not modify the Plaintiff's damages under the Indemnity Agreement. The parties' dispute as to the application of the Debtor's post-petition payments pursuant to the Cash Collateral Order is not an obstacle to summary judgment, because the Defendants will receive a credit for those payments. And the measure of the Plaintiff's damages in this action is not affected by other issues in the bankruptcy case, because the Defendants' liability under the Indemnity Agreement is independent from the Debtor's liability.

Accordingly, based on the entire record, the Court finds that the Plaintiff has established a prima facie case that there is no genuine dispute as to a material fact with respect to the second element of its claim, the Defendants' obligation to pay the amounts due under the Loan Documents.

The Defendants' Nonperformance  The Defendants do not dispute that they have not made the payments called for by the Indemnity Agreement. And as set forth above, the exculpation provisions of the Note and Mortgage do not relieve the Defendants of this obligation.

Accordingly, based on the entire record, the Court finds that the Plaintiff has established a prima facie case that there is no genuine dispute as to a material fact with respect to the third

persuasive.

element of its claim, the Defendants' nonperformance.

*          *          *

For these reasons, and based on the entire record, the Court finds that the Plaintiff has established a prima facie case that it is entitled to summary judgment on the first count of the Complaint.

### *Whether the Defendants' Affirmative Defense Under RPAPL Section 1301(3) Precludes Summary Judgment*

The Defendants argue that the Plaintiff's action is barred by Section 1301(3) because the Plaintiff has not shown that special circumstances exist to pursue a separate action.  They argue that RPAPL Section 1301(3) applies to actions to enforce a guaranty of a note, and in actions brought in federal court.  They assert that this case is no different than *Manufacturers Hanover Trust Co.*, where the court found that the filing of a bankruptcy petition and the temporary stay of the foreclosure proceeding did not amount to the necessary special circumstances.  And the Defendants argue that the District Court did not make a finding as to special circumstances.  For all these reasons, the Defendants urge that there is a genuine dispute as to material facts concerning whether the circumstances justify leave to file this action against them.

The Plaintiff responds that this action is not barred by Section 1301(3) because the District Court has granted it leave to assert these claims against the Defendants.  The Plaintiff notes that the District Court's Minute Order states that the Plaintiff is "granted leave to file a new action against defendants Perlmutter and Stark in their capacity as guarantors of the mortgage debt for the mortgage that is the basis of this case . . . ."  6/22/11 Minute Order, Second Supp. Knob Decl. Exh. A.  The Plaintiff also relies on the District Court's statements in the foreclosure action, including "[s]o could I, under the Real Property Actions and Proceedings

33

Law just say you were hereby granted permission to sue on the guarantees in a separate action?" and "you're granted leave.  Commence a new action, designate me.  It will be heard."  6/21/11 Tr. 5:14-18; 16:11-12, Second Supp. Knob Decl. Exh. B.  And the Plaintiff argues that even if the District Court did not grant leave, "several Courts in this Circuit have held that claims to enforce guaranties may be joined in a Federal Court foreclosure action, notwithstanding RPAPL 1301(3)."  Pl's Reply at 4.

Here, the Court finds that RPAPL Section 1301(3) is not a bar to this action.  The Plaintiff requested leave from the District Court in the foreclosure action, and the District Court granted leave to file a new action against the Defendants in its Minute Order.  The District Court's direction was plain and unambiguous, and as the foreclosure court, it is the appropriate court to make that determination.

In addition, to the extent that the Defendants seek to revisit that determination, that question is not before this Court.  The District Court referred the newly-filed action against the Defendants, not the foreclosure action, to this Court for proposed findings of facts and conclusions of law.  The foreclosure action in which leave was granted under RPAPL Section 1301(3) remains before the District Court.  That is, this Court has not been asked to revisit the issue of leave under the RPAPL, and it declines to do so.  It is axiomatic that this Court is not the proper forum to seek relief from an order entered in the foreclosure action.

The Court also notes that the Defendants did not raise a defense under RPAPL Section 1301(3) in the District Court.  This is no surprise, because the District Court had already granted the Plaintiff leave in the foreclosure action to commence a separate action against the

Defendants.[6]

Accordingly, based on the entire record, the Court finds that RPAPL Section 1301(3) does not bar this action.

*                    *                    *

For these reasons, and based on the entire record, the Court finds that the Plaintiff is entitled to summary judgment on the first count of the Complaint, subject to a determination of the amount to be awarded, taking into account interest, fees, and payments made through the date of judgment.

*Staying Actions Against Non-Debtors*

This Court may stay an action on several grounds. As the Supreme Court has observed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In the context of bankruptcy, this inherent authority is recognized in Bankruptcy Code Section 105(a), which permits the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). *See Musselman v. Home Ins. Co. of Ind. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 1990 WL 123840, at *2 (S.D.N.Y. Aug. 7, 1990) (finding that the bankruptcy court has the authority to enter a stay of an adversary proceeding).

---

[6] As noted by some courts, a defense under RPAPL Section 1301 may be waived if not raised. *See First Nationwide Bank v. Brookhaven Realty Assocs.*, 223 A.D.2d 618, 621, 637 N.Y.S.2d 418, 421-22 (N.Y. App. Div. 2d Dep't 1996); *Valley Nat'l Bank v. Spitzer*, 2011 WL 2084184, at *3 (N.Y. Sup. Ct. Kings Co. May 26, 2011).

The determination whether to issue a stay is committed to the court's sound discretion. That is, the decision whether to grant a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (stating that the decision to stay "is one left to the . . . trial court . . . as a matter of its discretion to control its docket"). "The party seeking a stay bears the burden of 'demonstrating the wisdom and justice of a stay.'" *Uni-Rty Corp. v. Guangdong Bldg., Inc. (In re Uni-Rty Corp.)*, 1998 WL 299941, at *7 (S.D.N.Y. June 9, 1998) (quoting *John's Insulation, Inc. v. Siska Constr. Co.*, 671 F. Supp. 298, 297 (S.D.N.Y. 1987)). And where "there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," the movant "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

Courts generally weigh the interests of the parties, the interests of good case management, and the public interest in determining whether a stay of an action should issue. As one court observed, factors to be considered include:

> "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting *Volmar Distribs. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993)). "In balancing these factors, 'the basic goal is to avoid prejudice.'" *Tradewinds Airlines, Inc. v. Soros*, 2011 WL 309636, at *3 (S.D.N.Y. Feb. 1, 2011) (quoting *Kappel*, 914 F. Supp. at 1058).

The bankruptcy court's power to stay adversary proceedings has been recognized in

several settings.  For example, one court stayed the non-arbitral claims in an adversary proceeding pending the outcome of the arbitration.  *See Kittay v. Landegger (In re Hagerstown Fiber Ltd. P'ship)*, 277 B.R. 181, 199 (Bankr. S.D.N.Y. 2002).  Another court found that the bankruptcy court did not abuse its discretion in declining to stay an adversary proceeding pending the outcome of a RICO action.  *See Uni-Rty Corp.*, 1998 WL 299941, at *7 (citing *Landis*, 299 U.S. at 254-55).

A stay may be appropriate for a variety of reasons.  For example, a stay may be appropriate to promote judicial economy, or to avoid confusion and possible inconsistent results, but only if it will not cause "undue hardship or prejudice against the plaintiff."  *Hagerstown Fiber*, 277 B.R. at 199 (internal quotation marks omitted).  At the same time, a court may decline to issue a stay where the outcome of a proceeding "is uncertain as to possible success and timing."  *Allan Applestein Ttee FBO D.C.A. Grantor Trust v. Province of Buenos Aires*, 2003 WL 1990206, at *4 (S.D.N.Y. Apr. 29, 2003).  In that case, the court granted the plaintiff's motion for summary judgment, but stayed execution of the judgment pending resolution of other matters.  *Province of Buenos Aires*, 2003 WL 1990206, at *5.

A different balance may be struck in the context of staying an action against a non-debtor.  At the outset, the automatic stay under Bankruptcy Code Section 362(a) generally does not apply to non-debtors.  But courts recognize a narrow exception to this rule when claims "against the non-debtor will have an immediate adverse economic consequence for the debtor's estate" such as claims "to establish an obligation of which the debtor is a guarantor" or claims "against the debtor's insurer," and "where there is such identity between the debtor and the . . . defendant that the debtor" can be considered the real defendant.  *Queenie, Ltd. v. Nygard Int'l*,

37

321 F.3d 282, 287-88 (2d Cir. 2003) (internal quotation marks omitted).

*Whether this Action Should Be Stayed*

The Defendants urge that the grounds for a stay of this action are implicit in the District

Court's decision to refer this matter to this Court.  There, the court found:

> Because I find that . . . South Side's proposed plan of reorganization proposes
> capital contributions from defendants and, in return, a release of defendants'
> guarantee, I refer this matter to the Bankruptcy Court . . . .
> If defendants' guarantee is called, they may no longer be able to make this
> [proposed] contribution, which would reduce the total assets available for
> distribution to other creditors . . . .
>
> [and]
>
> [E]very lender that takes a guarantee from a closely-held borrower assumes some
> risk that the guarantor will make a contribution to the reorganization and argue
> for expungement of the guarantee in return . . . .

Defs' Mem. at 9-10.  The Defendants argue that "[i]n view of these issues, any proceeding

against defendants on the guarantee should be stayed until the Court has ruled on the proposed

plan."  Defs' Mem. at 10.

The Plaintiff contends that this action should not be stayed.  It notes that the Defendants

have not cited any controlling law or determinative facts to support their request for a stay, or to

show that the Defendants are entitled to a release under the Debtor's Plan.  The Plaintiff argues

that non-debtor releases are granted only in "rare" cases, and that a release is not justified in this

case.  Pl's Reply at 11.  The Plaintiff also requests that this Court issue "proposed findings of

fact and conclusions of law to the District Court that the Guarantors are not entitled to a release

under the Debtor's Plan of their individual liability" under the Indemnity Agreement.  Pl's Reply

at 11.  The Plaintiff states that if the Defendants are not entitled to a release, then there is no

basis for a stay.

In addition, the Plaintiff argues that it is not for the Defendants to argue for a stay on the grounds that this adversary proceeding may adversely impact the Debtor's reorganization. Instead, the Plaintiff argues, only the Debtor may make these arguments on an application pursuant to Section 105(a) to enjoin the action on the basis of adverse impact on the Debtor's reorganization, and no such application has been made.

      <u>The Private Interests of the Plaintiff in Proceeding Expeditiously with this Case Balanced Against the Prejudice to the Plaintiff if this Case Is Delayed</u>  One factor to be considered is the balance between the private interests of the Plaintiff in proceeding expeditiously to enforce its rights and the prejudice to the Plaintiff if the case is delayed.  Here, the Plaintiff has valid claims against both the Debtor and the Defendants.  Its action against the Defendants to enforce its rights under the guaranty is not subject to the automatic stay.  It may proceed under the Indemnity Agreement against the Defendants, without first seeking recourse against the Property.  The Plaintiff commenced a foreclosure action in January 2009, and that proceeding has been stayed since the Debtor filed its petition some three months later.  *See, e.g.*, *Valley Nat'l Bank*, 2011 WL 2084184, at *4 (declining to issue a stay of an action to enforce a guaranty and describing prejudice to the creditor).  These circumstances indicate that the Plaintiff will be prejudiced if it is not allowed to proceed in its action against the Defendants.

      This is especially true where, as here, the Debtor is attempting to confirm its Plan over the objection of the Plaintiff, and where the confirmation proceedings may well have no impact upon the extent of the Defendants' liability.  As one court explained in a similar situation:

> The instant action . . . is for the payment of amounts due under the Guaranty Agreement for repayment of a loan which, as stated therein, would not have been made without such guaranty. . . . [T]he facts reveal that granting a further stay may prejudice the plaintiffs.  On December 30, 2010, Haboineh filed for

bankruptcy in the Southern District of New York.  As a result of this bankruptcy filing, the Pennsylvania foreclosure action has been stayed.  In fact, the instant action has been effectively stayed since December 9, 2009, though the delay was not entirely due to defendant.  The language of the Guaranty Agreement, executed by defendant in his individual capacity, states that the lender would not be required to wait until recovery via a foreclosure action or sale before it could pursue payment from Spitzer as guarantor.  The purpose of the Guaranty Agreement was to protect plaintiff's right to recover its loan to the LLC upon the LLC's default.  Where the LLC has entered bankruptcy and effectively suspended a foreclosure proceeding, the plaintiff is entitled to obtain compensation from defendant guarantor.

*Valley Nat'l Bank*, 2011 WL 2084184, at *4.

Accordingly, this factor weighs against granting a stay.

<u>The Private Interests of and Burden on the Defendants</u>  Another factor to be considered is the private interests of and the burden on the Defendants.  Here, the Defendants have not shown that they will be legally prejudiced if a stay does not issue.  The Defendants agreed to an absolute and unconditional guaranty of the debt.  The Defendants entered into the guaranty in their individual capacities, and the Debtor's ability to confirm a plan and other limitations on the amounts owed by the Debtor in its bankruptcy case do not affect the Defendants' liability.  The Plaintiff is entitled to pursue its claims against the Defendants and the Debtor and, as noted above, the Plaintiff may be prejudiced if its claim against the Defendants is further delayed.  For these same reasons, the Defendants have not shown "a clear case of hardship or inequity in being required to go forward . . . ."  *Landis*, 299 U.S. at 255.

In addition, the possibility of a release of the claims against the Defendants, without more, is insufficient to establish that they will be prejudiced by allowing this matter to proceed to judgment.  And similarly, the District Court's statements concerning the possibility of a release is insufficient to tip the balance in the Defendants' favor.

40

Accordingly, this factor weighs against granting a stay.

The Interests of the Courts  Another factor to be considered is the interests of the courts and judicial economy.  Here, the Defendants have not shown that these matters support the issuance of a stay.  The parties agree that discovery is not required, and therefore the only matter before this Court is the issuance of proposed findings of fact and conclusions of law, which will be subject to the District Court's review.  This process has moved expeditiously and has not delayed the proceedings in the Debtor's case, and the Court does not anticipate that it will.

Accordingly, this factor weighs against granting a stay.

The Interests of Persons Not Parties to this Proceeding and the Public Interest  A final factor to be considered is the interests of persons who are not parties to this action and the public interest.  Here, the Defendants have not shown that a stay is necessary to avoid injury to these interests.  They suggest that a finding of liability on the guaranty would affect their ability to fund the Plan or advance the Debtor's reorganization, but even if this consideration were dispositive, it is at odds with the record in the bankruptcy case.  When asked whether a money judgment entered against him under the Indemnity Agreement would "adversely affect" his ability to contribute to the Plan, the defendant Mr. Stark, one of two principals of the Debtor, responded "No." 11/9/11 Tr. 142:17-22, Bankr. Case No. 09-43576, ECF No. 369.  When asked if he had "the resources to pay any judgment that might be entered," Mr. Stark responded "I will try to raise the money from other sources."  11/9/11 Tr. 142:23-25.  And an attorney representing the Defendants testified that he was holding in excess of $450,000 in an account for Mr. Stark, and Mr. Stark testified that those funds would be used to fund the Plan and for no other purpose.

That is, the record does not show that allowing this action to proceed would injure the

41

interests of the Debtor or others who are not parties to this action. Nor does the record suggest that allowing this action to proceed would injure the public interest.

Accordingly, this factor weighs against granting a stay.

*        *        *

For these reasons, and based on the entire record, the Court finds that the Defendants have not established grounds to stay this action.

## Conclusion

For the reasons stated herein, and based on the entire record, the Court finds that the Plaintiff has established that it is entitled to summary judgment on the first count of the Complaint. The Court further finds that the Defendants have not established that they are entitled to a stay of this action.

Pursuant to Bankruptcy Rule 9033, the Clerk of the Court is directed to serve these Proposed Findings of Fact and Conclusions of Law on the Plaintiff's Motion for Summary Judgment on all parties by mail and to note the date of mailing on the Court's docket.

Dated: Brooklyn, New York
      March _16_, 2012

_s/ Elizabeth S. Stong_____
HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE
